```
            UNITED STATES DISTRICT COURT

          CENTRAL DISTRICT OF CALIFORNIA

                  WESTERN DIVISION

  THE HON. JUDGE MICHAEL W. FITZGERALD, JUDGE PRESIDING


UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,         )
                                 )
     vs.                         ) NO. 14-CR-267-MWF
                                 )
SANTOS CARLOS GARCIA-RODRIGUEZ,  )
                                 )
              Defendant.         )
_____)




            REPORTER'S TRANSCRIPT OF PROCEEDINGS

                Los Angeles, California

                  Monday, May 4, 2015




          Lisa M. Gonzalez, CSR 5920, CCRR
                  Official Reporter
          United States District Courthouse
          312 North Spring Street, Room 438
            Los Angeles, California  90012
                    (213) 894-2979
                  csrlisag@aol.com
                 www.lisamariecsr.com
```

```
 1  APPEARANCES:

 2  FOR THE GOVERNMENT:    STEPHANIE YONEKURA
                           ACTING U.S. ATTORNEY
 3                         BY:  CHRISTOPHER K. PELHAM
                           ASSISTANT UNITED STATES ATTORNEY
 4                         United States Courthouse
                           312 N. Spring Street
 5                         Los Angeles, California 90012
                           213.894.0610
 6
     FOR THE DEFENDANT:    MICHAEL S. MEZA LAW OFFICES
 7                         BY:  MICHAEL S. MEZA, ESQ.
                           333 City Boulevard West 17th Floor
 8                         Orange, CA 92868
                           714-564-2501
 9                         Fax: 714-996-7187
                           Email: mmezalaw@aol.com
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            Los Angeles, California, Monday, May 4, 2015;
 2                            2:00 P.M.
 3                             -oOo-
 4   (Monica Desiderio, Spanish-language Interpreter, previously
 5                             sworn)
 6            THE CLERK:  Calling Item Number 6, Case Number
 7   CR-14-267-MWF, United States of America v. Santos Carlos
 8   Garcia-Rodriguez.
 9            Counsel, please state your appearance for the
10   record.
11            MR. PELHAM:  Good afternoon, Your Honor.
12   Christopher Pelham for the United States.
13            THE COURT:  Good afternoon, Mr. Pelham.
14            MR. MEZA:  Good afternoon, Your Honor.  Mike Meza
15   on behalf of Mr. Garcia-Rodriguez, who is presently in
16   custody being assisted by the Spanish-language interpreter.
17            THE COURT:  Good afternoon, Mr. Garcia-Rodriguez.
18   Good afternoon, Mr. Meza.
19            We are here for the sentencing upon the
20   defendant's guilty plea.  I have reviewed the Presentence
21   Report, the Sentencing Letter to me from the Probation
22   Office dated March 23rd, the Government's Sentencing
23   Position, the Defendant's Sentencing Position with the
24   letters attached, and then also the plea agreement.
25            Mr. Meza, is there anything else that I should
```

```
 1  have reviewed?
 2           MR. MEZA:  Nothing else to review, Your Honor.
 3           THE COURT:  All right.  Mr. Pelham, anything else
 4  I should have reviewed?
 5           MR. PELHAM:  Not from the government, Your Honor.
 6           THE COURT:  All right.  Mr. Meza, have you
 7  reviewed with Mr. Garcia-Rodriguez the Presentence Report?
 8           MR. MEZA:  Yes.
 9           THE COURT:  Mr. Garcia-Rodriguez, have you
10  reviewed the Presentence Report with your lawyer?
11           THE DEFENDANT:  Yes.
12           THE COURT:  And it was interpreted for you into
13  Spanish?
14           THE DEFENDANT:  Yes.
15           THE COURT:  All right.  Thank you.
16           All right.  There's not any real dispute about the
17  offense level, or what the Criminal History Category is, of
18  29 and Roman numeral III, although, of course, the defense
19  disputes the seriousness of Mr. Garcia-Rodriguez' criminal
20  record and whether Roman numeral III is, in fact, an
21  appropriate reflection of how serious it, in fact, is.
22           Putting the Guidelines aside, Mr. Meza, is there
23  any other factual disputes or corrections in the Presentence
24  Report?
25           MR. MEZA:  No factual disputes or -- or
```

1  corrections, Your Honor.
2          THE COURT: All right. So there's really no --
3  also no issue about the supervised release.
4          What I'm going to do is read the six conditions of
5  the supervised release and then have Mr. Garcia-Rodriguez
6  acknowledge those.
7          Sir, you're going to be on supervised release for
8  three years. This was discussed at the time you pleaded
9  guilty. If you violate any of the terms and conditions,
10 then you can be sent back to prison. These are the terms
11 and conditions that I'm going to impose as part of your
12 sentence.
13         One, the defendant shall comply with the rules and
14 regulations of the United States Probation Office and
15 General Order 05-02.
16         Two, the defendant shall not commit any violation
17 of local, state or federal law or ordinance.
18         Three, the defendant shall refrain from any
19 unlawful use of a controlled substance. The defendant shall
20 submit to one drug test within 15 days of release from
21 imprisonment and at least two periodic drug tests
22 thereafter, not to exceed eight tests per month as directed
23 by the probation officer.
24         Four, during the period of community supervision,
25 the defendant shall pay the special assessment in accordance

1   with the orders of this judgment pertaining to such payment.
2           Five, the defendant shall comply with the
3   immigration rules and regulations of the United States.  And
4   if deported from this country, either voluntarily or
5   involuntarily, not reenter the United States illegally.
6           The defendant is not required to report to the
7   Probation Office while residing outside of the
8   United States.  However, within 72 hours of release from any
9   custody or any reentry to the United States during the
10  period of court-ordered supervision, the defendant shall
11  report for instructions to the United States Probation
12  Office located at this courthouse, 312 North Spring Street,
13  Room 600, Los Angeles, California.
14          And six, the defendant shall cooperate in the
15  collection of a DNA sample from the defendant.
16          Mr. Garcia-Rodriguez, the effect of these terms
17  essentially is this:  If you were to return to the
18  United States without permission, then that would be a
19  crime, but it also would violate these terms and conditions.
20  And apart from whatever punishment you received for entering
21  illegally, I could also punish you by -- for violating these
22  terms and conditions.
23          Do you understand that for three years after you
24  are released from prison, you'll be subject to these terms
25  and conditions, and that if you return to the United States

1  without permission, I can punish you for doing that?
2          THE DEFENDANT:  Yes.
3          THE COURT:  So now, the most important matter, of
4  course, is the amount of this sentence.  I'll hear from
5  Mr. Meza, I'll hear from Mr. Pelham, and then I'll hear from
6  Mr. Garcia-Rodriguez.
7          The government is advocating for a sentence of 108
8  months, endorsing the low end of the Sentencing Guidelines
9  Range as was recommended by the Probation Office.  And then
10 the defendant, through his lawyer, has asked for 36 months,
11 which reflects a substantial downward variance under the
12 Sentencing Guidelines.
13         So, Mr. Meza?
14         MR. MEZA:  Yes.  What accounts for the -- for the
15 variance, and I understand there's a -- there's -- it's a
16 large gap, but I'm not unaware of that.  It's simply asking
17 the Court to exercise its -- its authority and discretion
18 under the 3553(a) factors.  I understand it's a big -- it's
19 a big jump.
20         I -- I -- just to emphasize that Mr. Garcia,
21 although he has some prior criminal history, it's nothing on
22 the scale that was alleged in this indictment.  For the last
23 several years, as one of the letters confirmed by the
24 probation report, he's been full-time employed as a plumber.
25         From the letters from his family, they are

1 extremely supportive. I was -- particularly one of the
2 daughters -- all the daughters, but one of the daughters who
3 is still apparently living at home, speaking for the family
4 and the mom, they obviously -- he's a very good husband and
5 father. Both of those factors, is working and being -- and
6 his connection to his family, at least in my experience, is
7 inconsistent with the type of drug activity that you would
8 ordinarily associate with somebody who's operating on these
9 huge levels; for example, Mr. Arredondo who's the lead
10 defendant.
11          Since the -- I filed the position paper, the Court
12 did sentence one of the co-defendants, Mr. Anaya, who was --
13 who was involved in the -- in the Grape house, Grape Street
14 house, and I'm not -- and I -- and I've read the sentencing
15 briefs in that case, and I understand what the government
16 argued. I understand what the defense argued. I wasn't
17 here for the ruling, but I think I understand what the Court
18 based its -- its sentence on. And I'm not taking the
19 position that Mr. Anaya and Mr. Garcia are in the same
20 position, so I'm not arguing under the sentencing factors
21 that there's a disparity in sentencing. I'm not going to
22 make that argument.
23          But I would ask the Court to take that into
24 consideration in light of Mr. Garcia's employment history
25 and family history, and also add that, from what I

1  understand, Mr. Garcia and Mr. Anaya -- Mr. Garcia and
2  Mr. Anaya were friends.  They -- they met at a -- in one of
3  the previous jobs Mr. Garcia had.  So they -- they were
4  friends and friendly for a number of years.  Somewhere in
5  the mix, Mr. Arredondo became friendly with the both of
6  them.  And at some point, as I understand, Mr. Arredondo
7  even spent several weeks living with Mr. Anaya several years
8  ago before the advent of the -- of the conspiracy.
9          So what I'm understanding is is that these three
10 knew each other and were on a friendly basis.  And my sense
11 is that the reason Mr. Garcia got involved in this, and
12 probably Mr. Anaya, without speaking for him and never
13 having spoken with him, is more out of some sense of
14 Mr. Arredondo massaging the friendship for his own personal
15 ends, and I think he's still uses him, and it seems to me
16 that Mr. Arredondo probably abused that friendship and
17 Mr. Garcia made the wrong choices.  He's not going to sit
18 here and say he didn't make the wrong choices, but I think
19 it was more and more out of a sense, a false sense of
20 loyalty as opposed to anything for personal gain.
21         From what I understand, there was no money made on
22 this particular Grape House Street offense.  And I don't
23 know that any money was made at all during the relationship
24 between Mr. Garcia and Mr. Arredondo.  So I would ask the
25 Court to take that into consideration in imposing the

1  sentence.
2           THE COURT:  Mr. Pelham?
3           MR. PELHAM:  Your Honor, as set forth in our
4  papers, we do believe that the defendant does have a serious
5  enough criminal history to suggest that he hasn't taken
6  previous orders by previous sentencing courts seriously.
7  That's why we don't feel that he merits the type of variance
8  the Court has previously granted for the other co-defendants
9  whom I believe either had a -- well, especially Mr. Anaya.
10 Mr. Anaya either had zero criminal history or very limited
11 criminal history.  So for that reason, we persist in our
12 recommendation.
13          THE COURT:  Mr. Garcia-Rodriguez, I've read the
14 letters that your family wrote to me, including your
15 daughters.
16          Is there anything else that you would like to say
17 to me?
18          THE DEFENDANT:  No.  Right now I don't have
19 anything.  I'm just waiting for what you have to say.
20          THE COURT:  All right.  Thank you.
21          Here, the government is correct that the drug
22 activity, the drug amounts, the role in the conspiracy for
23 Mr. Garcia-Rodriguez is greater than for the co-defendants.
24 And, of course, the government is correct that he does have
25 an extensive criminal record.

1               Nonetheless, there is a basis for a small variance
2   on -- on both things.  As the defense pointed out, several
3   of the convictions for Mr. Garcia-Rodriguez are quite old.
4   And in terms of this variance on the offense level, it is
5   necessary, looking at the underlying statutory factors, that
6   this -- the sentence for this defendant, while considerably
7   harsher than for the co-defendants, not be completely out of
8   line with theirs.
9               Moreover, there are -- there is the defendant's
10  work history; albeit, that he is here illegally.  And
11  there's also the fact that ultimately the sentence that he
12  will receive is -- is going to be harsh.  It will be -- but
13  it doesn't necessarily have to be as harsh as the Guidelines
14  would suggest.
15              Either he will have learned his lesson this time
16  and most importantly will stay in Mexico, or he won't.  And
17  if he doesn't, then I can punish him through revoking
18  supervised release, and moreover, other prosecutors and
19  other sentencing judges can sentence him for being in the
20  United States illegally with a long and, at that point, very
21  recent criminal record.
22              So for all those reasons, I think that it is
23  appropriate to have a small variance under the Guidelines,
24  both as to the criminal history and as to the offense level.
25              All right.  Mr. Meza, any legal cause why sentence

1  should not now be imposed?

2       MR. MEZA:  No.

3       THE COURT:  All right.  The Court has considered
4  the sentencing factors enumerated at Title 18 United States
5  Code Section 3553(a), including an advisory range under the
6  Sentencing Guidelines of 108 to 135 months, based on an
7  offense level of 29 and a Criminal History Category of Roman
8  numeral III.

9       The Court now sentences as follows:  It is ordered
10 that the defendant shall pay to the United States a special
11 assessment of $100, which is due immediately.

12      Any unpaid balance shall be due during the period
13 of imprisonment at the rate of not less than $25 per quarter
14 and pursuant to the Inmate Financial Responsibility Program
15 of the Bureau of Prisons.

16      Pursuant to Section 5E1.2(a) of the Sentencing
17 Guidelines, all fines are waived as the Court finds that the
18 defendant has established that he is unable to pay and is
19 not likely to become able to pay any fine.

20      Pursuant to the Sentencing Reform Act of 1984, it
21 is the judgment of the Court that the defendant, Santos
22 Carlos Garcia-Rodriguez, is hereby committed on Count 1 of
23 the indictment to the custody of the Bureau of Prisons for a
24 term of 78 months.

25      Upon release from imprisonment, the defendant

1   shall be placed on supervised release for a term of five
2   years under the following terms and conditions -- and those
3   being the conditions that the Court has previously stated on
4   the record and were acknowledged by the defendant.
5           The justification for this sentence is, as the
6   Court previously stated, it is based on an analysis of the
7   underlying statutory factors, including the need to avoid an
8   unreasonable disparity between the defendants and for the
9   other reasons for a variance.  This reflects a variance on
10  Criminal History Category from Roman numeral III to Roman
11  numeral II and on the offense level from 29 to 27.
12          All right.  Mr. Garcia-Rodriguez, you've given up
13  virtually all of your rights to appeal the sentence;
14  however, if you nonetheless were determined to appeal this
15  sentence -- I don't see a basis for it myself, but if you
16  insisted on doing so, then that Notice of Appeal would need
17  to be filed 14 days from today's date.  That's the deadline.
18          If -- you can discuss this with Mr. Meza.  If --
19  if he refused to file a Notice of Appeal on your behalf --
20  and again, I don't think you have a basis to file one --
21  then you could contact my clerk here, Ms. Rita Sanchez, or
22  the clerk's office, and a Notice of Appeal will be filed on
23  your behalf.
24          Mr. Meza, anything else?
25          MR. MEZA:  Nothing.

```
 1              THE COURT:  Mr. Pelham?
 2              MR. PELHAM:  Your Honor, in furtherance of
 3  justice, the government will move to dismiss -- dismiss any
 4  remaining counts against this defendant.
 5              THE COURT:  All right.  That motion is granted in
 6  the interest of justice.
 7              All right.  Mr. Garcia-Rodriguez, good luck to you
 8  during your sentence and good luck to you in Mexico.
 9              THE DEFENDANT:  Thank you.
10              MR. PELHAM:  Thank you.
11              *(Thereupon, proceedings adjourned)*
12
13                            -oOo-
14
15
16
17
18
19
20
21
22
23
24
25
```

*CERTIFICATE*

*I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  July 7, 2015*

*Lisa M. Gonzalez*
*/s/_____*
*Lisa M. Gonzalez, U.S. Court Reporter*
*CSR No. 5920*